NO. 07-01-0322-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

SEPTEMBER 19, 2002

_____

TEXAS WORKERS' COMPENSATION INSURANCE FUND, APPELLANT

V.

ALISHA BYRD, BENEFICIARY OF MELVIN R. BYRD,
(DECEASED), RICHARD WALTERS AND PACIFIC
EMPLOYERS INSURANCE COMPANY, APPELLEES

_____

FROM THE 212TH DISTRICT COURT OF GALVESTON COUNTY;

NO. 99CV0651; HONORABLE SUSAN CRISS, JUDGE

_____

Before QUINN and REAVIS, JJ, and BOYD, SJ.[1]

Presenting four issues for our determination, appellant Texas Mutual Insurance

Company brings this appeal from a summary judgment in favor of appellees Alisha Byrd,

beneficiary of Melvin R. Byrd, deceased, Richard Walters, and Pacific Employers

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.

Insurance Company (PEIC). Appellant was formerly known as the Texas Workers' Compensation Insurance Fund (TWCIF) and for convenience, and as the parties do, we will refer to it as the Fund. In the suit underlying this appeal, the Fund sought judicial review of two separate decisions of the Texas Workers' Compensation Commission's Appeals Panel.

The issue in the trial court was whether the workers' compensation policy of Elliott Machine Shop (Elliott) (insured by the Fund) or the workers' compensation policy of Entergy/Gulf States (Entergy) (insured by PEIC) covered injury claims of Richard Walters (Walters) and Melvin Byrd (Byrd) based upon which entity was their employer at the time of the accidents giving rise to their claims. Determination of that issue involved the "borrowed servant" doctrine. The summary judgment giving rise to this appeal arose from PEIC's traditional summary judgment motion and, by its judgment, the trial court found Elliott was the employer of the duo at the relevant times. For reasons we later express, we affirm the judgment of the trial court.

The standards by which we review the validity of a summary judgment are by now so well established as to be axiomatic. A summary judgment for a defendant is only proper when the defendant negates at least one element of each of the plaintiff's theories of recovery, *Gibbs v. General Motors Corp.,* 450 S.W.2d 827*,* 828 (Tex. 1970), or pleads and conclusively establishes each element of an affirmative defense, *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979). When reviewing a traditional

summary judgment, such as the one here, we take as true all evidence favorable to the non-movant and indulge every reasonable inference in the non-movant's favor. *Nixon v. Mr. Property Management Co. Inc*, 690 S.W.2d 546, 549 (Tex. 1985).

Walters and Byrd were employees of Elliott and sustained injuries, which for Byrd proved to be fatal. However, the Fund argues that at the time of the injuries, Entergy was responsible for those injuries under the "borrowed servant" doctrine. A hearing officer of the Texas Workers' Compensation Commission determined that the Fund, as Elliott's compensation carrier, was liable in each instance. Those decisions were appealed to an Appeals Panel of the Texas Workers' Compensation Commission, which upheld the decision of the hearing officer in each instance.

In arriving at its decision, with regard to the injuries to both Byrd and Walters, the Appeals Panel affirmed the hearing officer's finding that prior to the dates of those injuries, Elliott had entered into a service contract with Entergy that provided Elliott would furnish truck drivers to Entergy, but that Elliott retained the right to direct and control the details of their work, and the drivers would remain Elliott's employees. In each case, the Appeals Panel concluded the Fund, as Elliott's insurer, was liable for the worker's compensation claims. The Fund then filed this suit in Galveston County, challenging both decisions of the Appeals Panel.

As we have noted, in presenting its appeal, the Fund raises four issues for our determination. In its first issue, the Fund queries whether the trial court erred in dismissing

3

the Fund's case against Walters.  The genesis of this question is that PEIC had filed a plea to the jurisdiction of the Galveston County trial court in which it asserted any suit involving Walters's compensation claims, by law, was required to be filed in Jefferson County, the county of Walters's residence, and if that plea was well taken and  the trial court overruled it in its summary judgment, reversible error exists. In its second issue, the Fund asks if the trial judge erred in dismissing its action involving Melvin and Alisha Byrd. Its rationale for raising this issue is that even if PEIC had correctly contended the trial court lacked jurisdiction over Walters's claims, PEIC made no such claim with regard to the Byrds and the court would have reversibly erred in finding it had no jurisdiction over that portion of the dispute.  Thus, if that was a basis for the court's summary judgment, it reversibly erred.

In its third issue, the Fund inquires if the trial court erred in rendering its summary judgment affirming the Commission's decision and dismissing all of the Fund's claims.  In supporting their claim that the trial court erred in doing so, the Fund reasons that, in relevant part, PEIC sought its judgment on the basis that a contract between TWCIF (*i.e.* the Fund) specifically provided that both Walters and Byrd would remain the employees of the Fund's policyholder and would retain control of them.  However, it continues, PEIC actually failed to produce proof of any such contract, and a judgment on that basis could not be sustained.  In its fourth issue, the Fund questions that the evidence conclusively negated the Fund's borrowed servant claim because PEIC's own proof established that its policyholder furnished the major equipment used by the workers, gave work instructions

4

directly to the workers, and "asserted the right to prevent the workers themselves (as opposed to preventing the Fund's policyholder) from discharging their work duties."

Because the Fund's first two issues are so closely related, we will consider them together. In addition to answering the Fund's petition, as noted, PEIC filed a plea to the jurisdiction of the trial court over Walters's claims, together with a motion to transfer venue to Jefferson County, which was Walters's residence insofar as those claims were concerned. Although PEIC sought summary judgment on two bases, *i.e.*, that Walters's portion of the suit was filed in the wrong county, and there was no issue of material fact that Elliott, not Entergy, was the employer of Walters and Byrd at the time of their injuries, the record reveals that on May 30, 2001, the trial court granted two separate and distinct judgments. In one, the trial court expressly overruled PEIC's plea to the jurisdiction and the motion to transfer the cause. In the other, it granted PEIC's motion for summary judgment. In that state of the record, then, the trial court simply did not grant PEIC's jurisdictional challenge. Thus, because the jurisdictional challenge was specifically, explicitly, and separately overruled, the summary judgment must have been granted on the remaining prong of its motion, namely, that the evidence was sufficient to show that the employees were not borrowed servants of Entergy, but remained employees of Elliott at the time of their injuries. Appellant's first two issues are overruled.

As we have noted, in its third issue, the Fund argues that in its summary judgment motion, PEIC stressed that "a contract between TWCIF and Pacific specifically states that

these employees [*i.e.,* Walters and Byrd] will remain employees of Elliott," and the "contract [between TWCIF and Pacific] specifically states that control will remain with Elliott." However, it argues, no such contract between those parties was ever received into evidence, and because there was no such contract admitted, the trial court erred in its judgment. From an examination of the motion over its 11-page length, it is apparent that this initial reference was inadvertent and the numerous other references show the alleged contract was between Elliott, the Fund's insured, and Entergy, PEIC's insured. Moreover, this particular challenge was not raised at the trial level. As this court held in *Rayl v. Borger Economic Develop. Corp.*, 963 S.W.2d 109, 113 (Tex.App.--Amarillo 1998, no pet.), issues not expressly presented to the trial court by written motion, answer, or other response may not be considered on appeal as grounds for reversal of a summary judgment. That being true, the question may not now be raised for the first time on appeal.

The Fund next argues that PEIC "inexplicably" attached to its motion as an exhibit an "incomplete and unexecuted contract" between Elliott and Gulf States Utilities Company. It asserts that although the contract was incomplete and unexecuted, PEIC never offered any affidavit or other evidence that the contract had ever actually been executed by the parties or that Gulf States Utilities Company was the same entity as Entergy. However, none of these objections were made before the trial court, nor were they raised in the Fund's response to the motion. Appellant's response to the motion was based upon the theory that "Byrd and Walters were statutory employees of Entergy because their work was governed by federal statutes and regulations which deem them

6

to be employees of Entergy as a matter of law." Indeed, in the closing portion of its response, the Fund argued that although "the existence of a contract is a factor to be considered in determining who is the employer, . . . it is not controlling." It also reasoned in its response, that if the evidence "shows that the right of control is different than that in the contract, the issue becomes one for the fact finder to resolve [citation omitted]." Here, the Fund asserts, "the summary judgment evidence clearly reflects that Entergy had the right of control despite the terms of the contract." Moreover, in its conclusion to the response, it opines that the parties could not "frustrate the federal regulations by agreement and those federal regulations become a part of any contract between Entergy and Elliott." Again, the Fund's appellate contentions with regard to the sufficiency of proof of identity of the parties to the contract, or the lack of completeness of the contract exhibit, were not raised at the trial level. Because of its failure to raise those questions before the trial court, the Fund may not now raise them for the first time. *Id.* at 113. The Fund's third issue is overruled.

Reiterated, in its fourth issue, the Fund questions the sufficiency of PEIC's summary judgment evidence to conclusively negate that Walters and Byrd were borrowed servants of Entergy at the time of the accident. Parenthetically, the record shows that in a pretrial joint motion for continuance, the parties stated that "the primary dispute in this case involves a question of law." Because of the nature of this challenge, it is necessary to review PEIC's summary judgment evidence[2] in some detail.

---

[2]The Fund did not submit any evidence with its response.

As relevant here, subsection 18 of section 401.011 of the Texas Labor Code defines an "employer" as a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance. Tex. Lab. Code Ann. § 401.011(18) (Vernon Supp. 2002). In the trial court, appellant did not argue that Entergy was the employer of record of Walters and Byrd. Rather, it contended that at the time of their injuries, Walters and Byrd were "borrowed servants" of Entergy and PEIC, as Entergy's workers' compensation insurance carrier, was liable for their injuries. In *Producers Chemical Co. v. McKay*, 366 S.W.2d 220 (Tex. 1963), the court explained the "borrowed servant" doctrine as follows:

> Whether general employees of one employer have, in a given situation, become special or borrowed employees of another employer is often a difficult question, particularly when employees are furnished with machinery by their general employer to accomplish part of a project or contract undertaken by another. Solution of the question rests in right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation. If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence.

*Id*. at 225.

The Fund argues that the contract governing the relations between Elliott and Entergy contains "contradictory provisions concerning which entity, Entergy or Elliott,

8

would possess the right of control over work that might be performed in the future by Elliott for the benefit of Entergy." The provisions to which the Fund refers are:

SECTION 1. Contractor [Elliott] agrees to do and perform for Company [Entergy] that work provided in a purchase order issued to Contractor in connection herewith, said work to be done on the terms and conditions expressed in such purchase order and in this Agreement . . . .

SECTION 3. Unless otherwise provided in the purchase order, all materials to be furnished by Contractor shall be of the finest quality available for the use intended. All work to be done hereunder is to be performed and completed in accordance with Company's standards, specifications and the industry practices pertaining to similar work, and any specific provisions in said purchase order, or in this Agreement, and shall be subject to inspection from time to time by Company's representatives. Upon completion, said work shall be subject to approval and acceptance by such Company's representatives. However, all such inspection and approval shall be concerned as to results only and not as to the method or manner of performing said work.

SECTION 4. Contractor shall employ and direct all persons performing any work hereunder, and such persons shall be and remain the sole employees of, and subject to the control and direction of, Contractor, and shall not be the employees of, or subject to, the direction and control of Company, it being the intention of the parties hereto that Contractor shall be and remain an independent contractor, and nothing herein contained shall be construed as inconsistent with that status. Contractor is to determine the manner and method in which the work shall be performed, to conduct the work in the name of the Contractor, and agrees to inform all persons employed by him/it and working upon said undertaking that they are employed by and work for said Contractor and that they are not employed by Company.

We do not agree that the provisions are inconsistent. Section 1 merely provides that the work to be done will be in accordance with the provisions of the purchase order and attachments. It does not deal with the control and direction of the employees performing the work. Section 3 refers to the work to be done and that it will be subject to

approval and acceptance. Even so, it closes with the express statement that the right of inspection and approval is related to "results only" and not as to the method or manner that work is performed.

Neither of those sections is inconsistent with the rather clear dictates contained in section 4 that the Contractor (Elliott) would employ and direct all persons performing any work hereunder, that those persons would be subject to the control and direction of the Contractor, and would not be the employees of the Company (Entergy) or subject to its direction and control. In *Castillo v. U. S. Fire Ins. Co.,* 953 S.W.2d 470 (Tex.App.--El Paso 1997, no writ), after referring to the *Producers Chemical Co.* explication of the borrowed servant doctrine, the court observed further that when a contract between the employers expressly provides that one or the other shall have right of control, that provision determines who is the employer. *Id*. at 473.

However, in *Exxon Corp. v. Perez*, 842 S.W.2d 629 (Tex. 1992), the court iterated a qualification upon that rule with the observation that if the contract was a mere sham or cloak designed to conceal the true legal relationship between the parties, the contract would not prevent the existence of a master-servant relationship. *Id.* at 630. Here, in addition to the contractual provisions, the record shows that in response to Entergy's request for admissions, the Fund admitted that Walters picked up his paycheck at Elliott, filled out an application at Elliott, that Entergy did not supervise Walters on the manner and details of how he performed his forklift activities, that Walters's paychecks were issued

10

by Elliott, and that Elliott withheld social security and federal taxes for Walters. It also admitted that Walters took Byrd's place after Byrd's accident, and Entergy did not provide paychecks to Walters or Byrd. Additionally, it was admitted that Norris Simon, Elliott's vice-president, wrote the Fund requesting the payment of Walters's and Byrd's workers' compensation claims and, in those letters, stated that Walters and Byrd were employees of Elliott.

In asserting that a fact question exists, the Fund points to evidence that Byrd's and Walters's jobs were the same, that Walters reported to Entergy's premises for work each day, that Walters received and completed paper work forms from Entergy each day, that Entergy told Walters where to drive his truck and provided Walters with trucks and forklifts for his use, and that Entergy reserved the right to prevent Walters and other drivers from performing work.

However, Entergy's traffic coordinator Keith Krechel testified that if there was a particular employee they did not want to work for them, Entergy's right was actually to call and advise Elliott of that fact. He also admitted that Entergy had no authority to actually hire or fire truck drivers. The summary judgment evidence was that, although Entergy furnished the equipment used by employees such as Walters and Byrd, their training to use the equipment came from Elliott. With regard to the paperwork, the evidence was that those were bills of lading or delivery tickets which were given to the driver each morning with instructions of where to go. The summary judgment evidence also showed that Elliott

was the entity which tested and certified the employees in the manner in which they would load their deliveries. If there was a dispute about whose instructions to follow, those of Elliott's would govern.

Suffice it to say, there was no summary judgment evidence that would show the contract was a mere sham or cloak to hide the real relationship between the parties. Appellant's fourth issue is overruled.

In final summary, all of the Fund's issues are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.

12